3.15.0770 People of the State of Illinois Accolade by Nicholas Atwood v. Orlando Turks of Holland by Carolyn Clarke Good afternoon, Your Honor, Mr. Counsel. My name is Carolyn Clarke and I represent the Accolade of the Orlando Turks. Three issues have been raised in the brief and I'd like to focus on the first issue, which is sufficiency of evidence, as well as the third, that the false impersonation statute has applied to Turks as unconstitutional. I'm also happy to take any questions on the second issue of the brief, which is whether the statute itself is basically unconstitutional. To begin, the Orlando Turks was convicted of false impersonation as a police officer. This has been arose as a consequence of a chance encounter with an off-duty police officer named Michael Brown. The facts producing that initial trial showed that Turks was pumping gas at a gas station, minding his own business, when Brown, who was an off-duty police officer, not in uniform, in his own personal jail, He was a probationary officer. Oh, yes, he was a probationary officer. So not in uniform and assisted in a gas station, Turks is pumping gas as far as it seems as though he's done with his business and is about to leave. When Mr. Brown says to him, what department are you with? And according to Turks, who did testify, he felt like he was being harassed. He says, no, Brown, this is a stranger. And Turks said that Brown named off a couple agencies, if you will, initials. And finally, Brown, or excuse me, Turks said, federal DHS and left the scene. Now, he leaves the scene and Brown decides to follow him into a separate location. Turks isn't afraid. He pulls over into a parking lot. I think it's a church or a grocery store, I can't recall, a school. And he was to say that Brown gets out of his vehicle, Turks exits his car, and then Brown demands that Turks produce some identification, and while doing so, Brown with his hand is on his weapon. Now, Turks doesn't know who this person is. He knows nothing about him. And based on this set of facts, the jury found Turks guilty of false impersonation of a peace officer. And the reason this conviction should be reversed is threefold. First, Brown did not see Turks engaging in any activity indicative of a peace officer, which would be pursuant to the definition in the statute, making arrests or maintaining order. Second, Turks' vehicle and clothing are not. It had nothing on it to say police, law enforcement, anything like that. You can look at the photo in the record. I believe it's navy. It looks black in the photo. Navy, shirt, black pants, combat boots. Something anyone here could buy at a department store. Additionally, his vehicle seems to be one of these vehicles that any citizen can purchase. There's no indication that it was a navy purchase, and it appears to be one of these vehicles that a police department has put up for auction, and any public citizen has the right to do so if purchased it. Finally, the third element here is whether or not Turks' name, in response to being questioned by the stranger, federal DHS is enough to uphold his conviction. And I believe that it's not. First of all, Brown did not testify to Turks' backhand or color of his body. So, he's not doing anything. We can't uphold his conviction based on his appearance. So what do we have left? His words. There's some dispute whether he said federal or federal DHS. But in the lightness, we're able to say we'll assume he did say federal DHS. One thing I did point out is federal DHS has many mission support careers, not necessarily law enforcement, peace officer-defined activities. And aside from that, him merely saying that, so upholding his conviction, would render his First Amendment right to make these two words, federal DHS, criminal, in this context, as a statute, is applied to him. Now, the reason he said this is because he said he's afraid of this man. So I think as a statute, it's applied to him. There's no criminal intent when he says these words to Mr. Brown. If he's trying to flee, he does. He leaves the scene. Brown follows him. So, at the gas station, he was merely saying that. It's not done with any criminal intent, criminal purpose. And the state hasn't produced any evidence otherwise. And as a consequence of this, this is a class 4 felony. Him merely saying that subjected him to this criminal penalty. I mean, you know, it would put a chilling effect on his First Amendment right, because it frankly is, if I may just touch on a second, the facial challenge. The situation where if someone is afraid and they're trying to get away mere words without any criminal intent, you could have a situation where, say, a woman at a gas station late at night, she's alone, a man starts sort of questioning her about what she's doing there. You know, she says, hmm, maybe I'll say I'm a police officer, he'll leave me alone. Now, he goes on to criminalize her context. I'm sorry, criminalize her words for doing that. Because in that context, she's doing it to maintain her safety. Or at least she thinks it's a way of maintaining her safety. She thinks, maybe if I tell this guy I work for the police. Assuming he was suggesting he was law enforcement, he's afraid of this guy. For good reason, he doesn't know him. He's a stranger. And as a consequence of that, he felt like this was one way I can get out of the situation I did. What happened next? Well, Brown calls him to another location. So without more, we would ask this court that he reverse his conviction on crime based on insufficient evidence. Also finds that the statute hasn't fined him based on his mere words. Not fighting words. These weren't words stated under oath. They were not criminal in the context that he may have used. This statement, federal DHS. And for that reason, I think it's commissioned. But if we reverse it outright, we don't have to reach the court. No, but you could. I believe it's, yes. He could. I think it's a carpenter, the culprit to go ahead and announce the sealed compartment case. I believe that the Supreme Court did note that there was a reasonable doubt challenge in there. But they found that the statute itself wasn't constitutional. It was overly broad. And through their authority, they did go ahead and reach for the court. Of course, it would be accurate to have his conviction reversed. But, you know, the fear here is that someone else could run into the same problem. So in that sense, you know, we believe the statute is spatially unconstitutional. Definitely unconstitutional applied to him. And it should be struck down. Thank you. Thank you, Mr. Carpenter. And Mr. Adler. May it please the Court. Your Honors, Counsel. My name is Nicholas Adler, and I will be representing the people of the State of Illinois this night. I will be arguing in place of Don Murphy, who has retired since this brief was filed. As raised by the defendant, the first issue in this case is whether or not he was convicted beyond the reasonable doubt of the charge of false personation of an officer. This Court would use challenge to the sufficiency of the evidence in the light most favorable to the people, and then determine whether any rational trier of fact could have found the defendant guilty of the elements of the charge. To be convicted under the false personation of an officer statute, the defendant had to knowingly and falsely represent himself to be a peace officer. Under that statute, the jury may infer the defendant knowingly and falsely represented himself to be a peace officer if he's in possession of a uniform, badges, or maybe makes oral representations to that fact. The evidence in this case shows that we have all three. Officer Michael Brown testified. Officer Brown was an off-duty officer. He'd been testifying at a trial. He was on his way home. He was wearing a suit, but he was also wearing his badge and his gun on his face. Mr. Brown went to the Shell Station. He pulled into the pump, and after he got out, he noticed the defendant present. Were those in plain sight, or did he have a jacket over them? I think my reading of the record, Mr. Brown's testimony didn't indicate whether or not he was wearing a jacket, but some testimony or written statement by the defendant later maybe indicated his jacket was on, so it's possible they weren't immediately visible at that time. However, when he arrived, he saw the defendant standing there next to his black Crown Victoria, which was a police interceptor model, as testified to by Officer Brown. And Officer Brown immediately, based on the defendant's appearance, believed that he was an officer. Officer Brown testified that the defendant was wearing what police officers refer to as a— Well, he didn't stop initially. What actually happened, and I'll get to that in a moment— Okay, I'm sorry to interrupt. No, no problem. But the defendant pulled into the school parking lot, and Brown just followed suit. But at the pump— Okay, let me ask a different question. If he believed he was a police officer, why did he follow him? Well, I'll get to that as well, Your Honor. Okay. Officer Brown's at the pump. He sees the computer, or he sees the vehicle. He notices there's police lights in the rear window. There's a spotlight on the side of the driver's side above the mirror. There is a mobile data computer terminal inside that he would commonly find. And based on the defendant's appearance, as I stated, he was wearing what Officer Brown characterized as a battle-dressed uniform. That's a navy blue shirt, black cargo pants, and black boots. And these are typically used in tactical situations. He was ready to wear that stuff. I mean— Yes, these items— I don't understand. Certainly are. These items can be purchased at a surplus store. That was testified to. They can be purchased anywhere. But when we look at the full context of this situation, and we look at the vehicle, Officer Brown testified, he said, what agency are you with? Because the immediate appearance to a police officer, much less a civilian, was that this man was involved with law enforcement. And it was to that that Officer Brown testified that the defendant stated, authoritatively, federal DHS. So after that, they finished getting the gas. The defendant leaves. And as he leaves, Officer Brown notices that the rear license plate of the Crown Victoria is an Indiana Bicentennial license plate, which he thought was extremely unusual for an unmarked police car to have a personalized license plate. He also noticed that the rear lights were sort of shoddily installed. And that would not be the case with a professional police cruiser. So it was based on that evidence that he then followed him. And Officer Brown testified he didn't initiate a traffic stop. He called 911 because he was out of his jurisdiction. And within about two miles, it was the defendant who pulled into the school parking lot. And contrary to the defendant's statement that he was afraid of Officer Brown, Officer Brown testified that after he pulled in in his blue Chevy Cobol, his private vehicle, the defendant immediately exited his vehicle and began rapidly approaching Officer Brown. So it was at that point Officer Brown steps out of the vehicle. He draws his service firearm, announces that he's a police officer, and asks for credentials. A short time later, the Creek Police Department arrives. And they begin talking with the defendant. The officers also search the defendant's vehicle. Inside the cruiser, they find police tape, traffic cones, police wands to direct traffic with. They find numerous badges. But did the defendant show that to Officer Brown? He didn't show that at the time, but Officer Brown had a reasonable suspicion that the defendant could be falsely impersonating an officer based on what he'd seen at the pump. What did he see? He saw a car. He saw a car. He saw a police car at one time. He saw a guy in dirty pants. I mean, I never heard of him. He saw those things, but it was also in concert with the oral representation that the defendant made that he was with federal DHS. So the appearance of the defendant with that statement together, as the statute says, you can infer that a person has falsely represented himself as an officer. In order to infer somebody is... I just have trouble. I don't think Brown believed for a minute he was a police officer. Well, I think he believed it initially because he asked the guy what agency he was with. And so if we start questioning what Brown was thinking, that's almost where we get into a situation where we're retrying the case. We're just trying to look at what evidence the jury was presented, and then as the fact finder, it was up to them to assess credibility. So you're thinking attire only is sufficient to falsely impersonate a police officer? Pursuant to the language of the statute, it requires no oral representation. So if I walk down the street in full Cubs uniform, although that probably wouldn't be terribly smart right now, do you think anybody would really believe that I played for the Cubs? Probably not, but it's not a crime to wear a full Cubs uniform. It is a crime to dress like a police officer. And if we look at the Fort Bishop case of People v. Thomas, I think that addresses some of your concerns. If we look at the legislative intent behind the statute, first, there is no criminal intent required to be convicted under this statute. That's because the people of the state need to be protected from individuals who would falsely and knowingly represent themselves to be people of authority. Mr. Atwood, I'm sorry, I have to stop you. Where does it become a crime to wear a police officer, a police uniform? Well, under the statute, all you have to do is knowingly and falsely represent that you are a police officer. You can represent simply by the clothing that you're wearing. Can a civilian legally purchase and drive the Lincoln car that you're talking about? They can. Can a civilian legally purchase and wear the clothing that you're talking about? They can. So, all of the things that the defendant had were legal to be possessed by a civilian? Without question. Okay. So, there are only two things in this fact situation, as I can see it, that would arguably lend to his conviction because everything that he's done is legal. So, Brown says to him, what department are you with? And suggests a bunch of them. He says DHS. Now, you're saying that that's a representation? That he's a police officer? I think first it's disputable whether or not he actually suggested numerous other agencies. I believe that came from the defendant's testimony. And with regard to the credibility of the defendant, I will acknowledge that Ms. Duffy did not argue or cite to the defendant's testimony in her brief. And I think that's due to the very confusing nature of the record on appeal. The record's a mess. I tried to, in reading this after the fact, it's disorganized. There were four supplemental records. And I think that's why she did not cite to it. However... If she didn't argue it, you can't. Well, I think in a challenge to the sufficiency of the evidence, this Court has a duty to review all the evidence that was presented to the founder of the fact. And under this situation, the defendant did testify and Ms. Barber said... Well, we don't have a duty to search the record, though, if it hasn't been brought to our attention. I would not make that argument, certainly. Sorry. But I think just with regard to the fact that the statute... And I appreciate that you didn't write this brief and you probably would have written it differently. I do appreciate it. Certainly. But I think with regard to the way the statute is written, it does not require oral representation. It only requires the representation. I think that gets to the important facts of why we do this. We do not want individuals pretending to be police officers. And there's no criminal intent to this statute, which was part of the argument for the second issue, because there are other ways that this would be harmful to the public without a criminal intent. For example, in the vehicle, the defendant had traffic cones, he had wands to direct traffic, and he had vests that would allow him to direct traffic. He could be a well-intended citizen and come upon an accident and then begin directing traffic. He has no training to do that. But that is one way in which a person can falsely represent themselves to be a police officer. But he wasn't. He wasn't. He wasn't directing traffic. I agree with you. Certainly. He's out in the middle of the road with a flashlight in that attire. But he was charged under this statute, and this statute does not require him to do anything but knowingly and falsely represent himself. When he made this statement, as an officer, he didn't do that. He represented himself to work for the Department of Homeland Security. Are you suggesting  who die in a police officer's shirt and wear a poor replica of a police badge on October 31st report that they were a criminal offender with no intent that anybody believes they're a police officer but they're violating the statute? That precise example was brought up in a Thomas case out of the Fourth District. The only case that we have that interprets this statute. And they specifically rejected that defendant's argument that a Halloween costume or a masquerade party would somehow create an unlawful intent. That's why there's no criminal intent to this statute because the purpose is to protect the public from people who would knowingly and falsely act under color of authority. There's no need that they do so with criminal intent. He didn't act under color of authority. He didn't do anything. He represented himself. He pumped gas. He answered a question. He drove a car. He didn't volunteer the information. He didn't approach Brown and say, I'm with the DHS. He didn't represent himself. Brown asked him an innocuous question, but then the defendant responded that he was with federal DHS. So Brown had no... Who does DHS have? Territories. They could. Territory workers. They could. Everything they have. I don't know. But it's under the circumstances for this task. The way he is dressed, the vehicle he's chosen, the aftermarket modifications he personally made to the vehicle, these all kind of show that he's representing himself to be involved in law enforcement. And when we... Investigator Stoltz, for example, he's a Department of Homeland Security investigator. He specifically investigates these types of issues because of the serious security risk of individuals who pretend to be involved in law enforcement. He even stated that one of the IDs the defendant carried was a Lieutenant in the Protective Services Division. Did he show that ID to Officer Brown? I don't mean to beat you up. No, certainly not. He did not show that ID, but I think it shows the knowledge that he was falsely representing himself to be affiliated with law enforcement. We don't know why he was doing that, but under the totality of circumstances, we can see that the   to put off an image. And the defendant himself  in Stoltz's investigation, Stoltz asked him, why did you install the police lights in the back of your vehicle? The defendant said that he installed them because he's a process server and he sometimes goes into bad neighborhoods and he wanted them to believe he was police. I feel like that says all of his intent in one sentence. It's clear that he has all of these items because maybe he admires police. There's no negative intent necessarily with what happened, but under the letter of the law, the statute he was charged under, all he had to do was knowingly and falsely represent himself to be a peace officer, a public official, etc. And he did do that because he knew he was not a police officer or a peace officer. And ultimately this was a question for the jury to determine. And I think based on the circumstances that were presented to the jury and the credible testimony of the officers, that they ultimately found that the people proved beyond a reasonable doubt that the defendant had committed this crime. Would you talk about the constitutional issue? Because if you're right and he was properly convicted, then I think we have a constitutional problem. So turning to the second issue, whether or not the statute is based on the constitutional issue, as I mentioned, the purpose of the statute is to challenge the knowing mens rea element of the statute. The first one was the people being magical, and the statute in question in that case was a identity theft statute. And basically, it was a crime to knowingly use any personal identification information of another person to gain access to a record of theirs. And so clearly, that's a very broadly written statute to use one person's information to obtain other information about that person. The court in that case gave a couple examples of the first one. A neighbor could use his neighbor's name to go online and look up where they finished in the Chicago Marathon, and that would technically fall under the language of the statute. But that's clearly innocent conduct. The secondary issue that they talked about was, you know, a husband or a wife could call the auto repair shop and check on the status of their spouse's car, and given their information to do so, they would be committing a crime under the statute. It's clearly very broad language. The second case was People v. Carpenter. This is a statute that involved, it made it illegal to knowingly possess a motor vehicle that had a secret compartment, but it didn't get any more narrow than that. So you could have a secret compartment in your vehicle with no contraband or illegal material, yet you would still be breaking the law under the language of that statute. Both of those statutes were invalidated. But here, under Thomas and under the language of the statute, it's very narrowly written. The only way you can violate the statute is if you knowingly and falsely represent yourself as a peace officer. And that is a very narrow set of circumstances. There isn't a lawful circumstance where someone can go say, dressed in a uniform, I'm an officer of the law, unless they are an officer of the law. So certainly, this is reasonably related to the purpose of the statute, which is to protect the public who does not have a right to    And  issue is that the statute is constitutional. It's narrowly written. To briefly address the third issue, in the as-applied argument, we're looking at a similar situation, but the facts and circumstances of this particular incident are what we're looking at. Specifically, defense counsel argues that the statute as applied to him makes it unconstitutional because, to use the words, federal DHS. But as we've argued ad nauseum here, as applied to him, he said that in the context of being in possession of a vehicle that looked remarkably like a police car while dressed in a uniform that looked remarkably like an officer's tactical police uniform, wearing a hat with some sort of emblem on it, I think they said it was an eagle or something like that. So, under these circumstances, in that specific context, it would be, it doesn't affect the defendant's constitutional rights to use the word federal DHS outside of that, but based on the totality of these circumstances, to say federal DHS is an oral representation that you are law enforcement. And so one of the very narrow circumstances of the statute, as applied to the defendant, those words are constitutional because they're simply a crime. And this isn't going to be broadly interpreted. You and I can say federal DHS in any other context and it's lawful. It is only unlawful in this context. And for all these reasons, people respectfully request that this court determine the defendant's conviction in sentence. Thank you. Thank you, Mr. Abbott. Ms. Karquis. Your Honor, counsel just said that it's my claim saying federal DHS is fine. It was just DHS wasn't it? Didn't he just say DHS? Well, if the court says they will say it's federal DHS, that's fine. Saying those words is not criminal. Didn't say no to Mr. Brown. It's not criminal. He's not being interviewed by the FBI. That's a crime. Your Honor, that's a crime. He doesn't know what a crime is. How is this a crime? And also, when he's wearing this vehicle, essentially that sets up a strict liability situation where anyone with that vehicle who decides to put on a navy shirt, black pants, and hoodies is committing a crime. That's exactly what the statute is overbroad. And this particular case highlights the problem with the statute. And I would ask this court to look at the structure of the statute. What they did is look at the other subsections that did have more than mere knowledge. And I would say the statement here, which I did lay out in brief, the other subsection is that this statute has deception, fraud, if you're pretending to be a veteran, if you're trying to solicit money. So I'd ask that you use the same analysis of the statute. Finally, with regards to Mr. Terps, he's not in a uniform. He's, again, in a navy shirt, brown  And if you want to make that a crime, then make those items unavailable to purchase and to own them as a crime. But to have them legally purchased and available to anyone in the public and then criminalize that after the fact because he happens to have these things, I mean, that is a crime. So I would ask that you reverse this conviction based on the constituency grounds and given the context of this case, I think it highlights the problems of the statute so broad, criminalizes innocent conduct, that it should be struck down. Thank you. Thank you, Mr. Congressman. Thank you both for your time. We're